UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case Number 9:12-CV-80135-Marra/Matthewman

RICHARD CLYDE ALTHOUSE,
Plaintiff,

vs.

PALM BEACH COUNTY SHERIFF'S OFFICE,
Defendant.

_____/

## OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, SPECIFIC MATERIAL FACTS IN DISPUTE, & MEMORANDUM OF LAW

The Plaintiff, RICHARD CLYDE ALTHOUSE, Pro Se, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, and General Rule 7.5 for the Southern District of Florida, does hereby file this Opposition to Defendant's Motion for Summary Judgment, Specific Material Facts in Dispute & Memorandum of Law.

Plaintiff agrees with Defendant that Plaintiff is Pro Se and is a free citizen who is not incarcerated in the Palm Beach County Jail. Plaintiff retains, and exercises, his First Amendment Right of Speech guaranteed him under the First Amendment of the United States Constitution to communicate with any and all persons by mail, including persons incarcerated in the Palm Beach County Jail without the restrictions of a policy which does not further an important or substantial governmental interest unrelated to suppression or expression. Such policy must not be greater than is necessary or essential to the protection of the particular governmental interest involved.

1

Based upon the pleadings, the record evidence and the exhibits filed both in Support of Defendant's Motion for Summary Judgment and in Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Specific Material Facts in Dispute, and Memorandum of Law, and as referenced herein, it is proven that that there are many genuine issues of material facts   in dispute regarding Plaintiff's claims against Defendant. The Defendant is absolutely not entitled to summary judgment and this proceeding should be set for trial.

In support of this motion, Plaintiff refers this Court to the Specific Material Facts in Dispute and Memorandum of Law.

In this pleading, the following abbreviations/acronyms are used.

COP is the acronym/abbreviation for CORRECTIONS OPERATING PROCEDURE

USPS is the abbreviation for UNITED STATES POST OFFICE

Plaintiff's Exhibits will be identified as Ex.

Defendant's Exhibits will be identified as Defendant's Ex.

Additionally, as Plaintiff could not locate any definitions for the words: mail, postcard, or volume, Plaintiff offers this Court the following definitions obtained from Websters   Dictionary, copyrighted and printed   in 2000

Mail:          n. 1 letters, etc sent by postal service 2 postal system

Postcard:      n. card, often a picture card, sent by mail

Volume:        n. 1 a book 2 cubic measure 3 amount

## FACTS and SPECIFIC DISPUTED MATERIAL FACTS

1.      Without any chance for a public discussion or challenge prior to the implementation of the postcard only policy for incoming mail, on September 19, 2011, the Sheriff of Palm Beach County implemented a revision to corrections operating procedure, COP #929.00, allowing only incoming postcards unless privileged mail (Ex. "A" - Inmate Mail Notice) Please note that C.O.P. 929.00 was originally issued and put into effect on January 4, 1977. The postcard only policy wasn't implemented until September 19, 2011, but, the revision box reflects a revision date of 07/11. (Ex. "B" - C.O.P. 929.00, 07/11) Prior to that revision, C.O.P. 929.00 had last been revised 10/09. (Ex. "C" - C.O.P. 929.00, 10/09)

C.O.P. 929.00 - 2011 version (pertinent parts)

III.    DISCUSSION: There is no limitation on the volume of lawful mail, except for packages and publications, certain content or source of the mail, or when such limitations are necessary to protect public safety or facility order and security. All inmate mail entering or leaving the facility shall be processed by the facility's designated personnel.

V.      PROCEDURES:
        A.      Incoming Mail - All incoming mail, except legal mail and other specially approved items, must be in postcard form.

a.      Postcards minimum size requirements are 3.5 inches by 5 inches (as determined by USPS regulations)
b.      Postcards maximum allowable size is 4.25 inches by 6 inches (as determined by USPS regulations)

Defendant disputes paragraphs a. and b., stating that the sizes of the postcards are set by the USPS is not true. Those sizes are the size for which the postcard postage rate is applicable. If the postcard is larger or heavier, the postal rate is higher. Any other sized post card "over 6" long x 4 ¼" high x 0.016" thick will be charged as a letter or large envelope depending on size." (Plaintiff's Exhibit "D". USPS .COM   9/15/2011,

3

Postal Rates eff. 1/22/2012) Thus, the size restriction imposed by Defendant is <u>NOT</u> based on USPS regulation, but, by arbitrary rule of Defendant. This is a genuine dispute of material fact as Defendant has attempted to improperly bolster and "bootstrap" the size restrictions/requirements of the postcard allowed in its Inmate Mail Notice and revised C.O.P. 929.00., and has not shown that public safety or facility order and safety are jeopardized based on the sizes of postcards.

C.O.P.   929,00 - 2011 version continued:

     Section V. A.   1.

c.      Postcards must be solid color - no photos, art or graphic designs
d.      Must be written or typed in black or blue ink only

     Plaintiff disputes paragraphs c. and d. as they are subjective and have no rational, legitimate basis. Photo's (sic)[photographs] are made by exposing film, or by digital camera. Does the Defendant also mean pictures, drawings, sketches, diagrams, etches, emblems, or symbols? As COP 929.00 does not provide any definitions of the words, nor descend to particulars, Plaintiff must guess as to its meaning.

     Further, nowhere in C.O.P. 929.00, nor the Inmate Mail Notice, affidavit of MICHELLE DeLAURA, Section Manager (Defendant's Ex. "B") or any other pleading or exhibit in the record, does it state how the postcard being a solid color, without photos, art or graphic design, and only being typed or written in black or blue ink is necessary to protect public safety, facility order and security.   Plaintiff obtained   postcards from the USPS which is all white save for the trademark and postage which are accepted by the Palm Beach County Jail.   Interestingly, the postage is either a drawing, photo, watermark or graphic design of a sailboat on the water and showing its reflection in the water and

the shoreline. There appears to be at least three different colors in the postage. (Plaintiff's Ex. "E") Additionally, the designer of the postcard postage design, has it's copyrighted trademark in the lower left corner of the postcard. This is a genuine dispute of material fact as Defendant has not shown how the restrictions on the type of postcard places protects public safety or facility order and security and places an undue burden on Plaintiff, and more importantly, restricts his freedom of speech and expression. Plaintiff used the typewriter at the Palm Beach County Law Library for the smallest print on a typewriter to show the amount of communication he was able to put on a postcard. (Plaintiff's Ex. "E")Declaration of city mail carrier KIM R. VAN COURT, the USPS would deliver the postcards the jail restricts. (Plaintiff's Ex. "F")

Lastly, based on the size dimension requirements of the postcards, Plaintiff would be forced to spend an exorbitant   amount of money on postage to convey any amount for a substantive communication. It would require Plaintiff to spend $2.80 for 4 postcards just in order to send the cumulative amount of a single 81/2 x 11 piece of paper. similarly, a one page letter would only cost Plaintiff 45 cents.

2.     Plaintiff agrees and does not dispute the property section processes all the inmate incoming and outgoing mail including privileged correspondence.

3.     Plaintiff   agrees with Defendant's statement that, "The mail is monitored for encoded messages, gang affiliations, criminal activity, security threats, and any other material which may disrupt the facility and pose a potential threat to security (Defendant's Ex. "B") Therefore, staff are still taking time to inspect and read the postcards and other mail entering into the facility.

4.      Plaintiff agrees and does not dispute with Defendant that after outgoing mail is

reviewed and inspected, it is brought to the US Post Office.

5.      Plaintiff agrees with Defendant that during the years of 2008, 2009, 2010, and

2011, the mail room processed approximately 11,000 letters monthly. Plaintiff disputes

that the "postcard only" policy has reduced the number of letters in envelopes being

processed as neither Defendant's motion, nor   Defendant's affidavit, give any numbers

for incoming mail since the postcard only policy was enacted.   (Defendant's Ex. "B")

6.      Plaintiff opposes and disputes   the Defendant's statement that the postcard

only policy was implemented as a method to address the daily concerns of receiving

potentially dangerous and hazardous materials in the mail through the <u>use of an envelope</u>.

Defendant's statement, "…These types of incidents have occurred <u>and still occur</u>

<u>through the use of fake   legal mail</u>  as legal mail can be sent into the facility in an

envelope. …" (Emphasis supplied) (Defendant's Ex. "B") Additionally, going back to at

least 1977, the jail has not opposed letters in envelopes. (Ex. "C") And they still permit

money orders to be mailed into the facility in envelopes. (Ex.'s "A" and "B") This is a

genuine dispute of material fact in dispute and is a variance from C.O.P. 929.00 which

states that the limitations are to protect public safety or facility order and safety and the

affidavit of MICHELLE DeLAURA which stated that "Fire Rescue has responded to a

number of suspicious white powder incidences that occurred while opening incoming

mail envelopes." Envelopes are still coming in for money orders and legal mail, so there

is still the risk of, as MICHELLE DeLAURA stated in her affidavit, "The occurrence

of a chemical biological incident (white powder incident) results in a facility shut down

and all inmate movement ceases. This affects the inmates, the staff, the general public,

the court system, and every other entity associated with the detention facility.""" (Defendant's Ex. "B")If all it takes is one envelope containing a hazardous substance to cause such a calamity, regardless of who it is sent from or classified as, why allow any envelopes be sent into the facility? Obviously Congress doesn't share the same concern or they could have shut down the USPS and discontinue mail altogether.

Unlike inmates in Federal custody detained in the Palm Beach County Jail, Federal Detention Center or imprisoned in a Federal prison, inmates held in the jail on state charges are charged a daily subsistence fee and processing/booking fee. (Ex. "G") Plaintiff believes Defendant still allows money orders to come in so that they can obtain the subsistence fees from inmates. This is a genuine dispute of material fact as it shows a variance of the need to "protect public safety or facility order or safety"  from the collection of subsistence fees from inmates receiving money orders in envelopes.

7.    Plaintiff agrees with Defendant that, "However, even the limitation regarding the use of a postcard for incoming, general, non-privileged mail has not prevented all attempts to introduce contraband into the facility. (Deft. Ex. "B") (emphasis supplied)

8.    Plaintiff opposes and disputes Defendant's examples of records of incidents involving "security problems related to **incoming mail**:"

Defendants list of "numerous incidences" totaled 42 and are the exact same from the affidavit of MICHELLE DeLAURA (Defendant's Ex. "B") Plaintiff concedes that the list is not exhaustive of all incidences, and it would be literally impossible and not necessary for Defendant to provide each and every one. However, out of these 42 "numerous incidences", Defendant does not even provide a case number, or conclusion to the incident, and only 7 of the incidences contained first and last names of  the inmates

allegedly involved, and 1of the incidences listed only one name.

The first 40 of the 42 incidences occurred prior to the implementation of the postcard only policy, September 19, 2011, between 2008 and 2011. Of these incidences, in the three years the incidences were reported from, the vehicle for the mail were: Legal Mail (15), Cards (13), Incoming Letters (10), Outgoing (1), Found in property (1) The two incidents after implementation were: Legal Mail (1), Postcard (1) Additionally, neither the motion, affidavit of MICHELLE DeLAURA, nor any other document state or show any discipline of inmates involved, any arrest of any sender of alleged contraband, nor specific dates and instances or statements of how facility order or safety were disrupted. This is a genuine dispute of material fact as the Defendant relies on the affidavit in and of itself, and in using it to support paragraphs 2,3,4,5,6,7,8 and 9 in its statement of facts, and the affidavit is almost the entire crux and justification of Defendant's Motion for Summary Judgment and is practically a reprint of the affidavit in the statement of facts. Yet, neither the affidavit, nor any pleading filed by defendant cite to a specific   date, incident, nor case number which shows that public safety or facility order and security were ever compromised, endangered or disrupted.

C.O.P. 929.00 - 2009 version didn't even have any restrictions regarding postcards. The policy also permitted photographs (8) to be mailed in. (Ex. "C")

9.     Plaintiff opposes and disputes the assertions that the postcard only policy has resulted in "a significant decrease in the introduction of contraband through the use of correspondence contained within an envelope."   It has NOT eliminated the introduction of contraband. Defendant has not provided even approximate numbers of   the amount of contraband sent in as non-privileged enveloped mail prior to the postcard only policy, nor

since the implementation of the policy. Legal mail/fake legal mail is still sent into the facility in envelopes also. Since legal mail has to be allowed, and in the 42 examples provided, a total of sixteen (16) instances involving "fake" legal mail were reported. To ensure authenticity, jail staff will have to call and verify each and every letter in the vehicle of "legal mail. Many vehicles of legal mail contain numerous numbers of documents, i.e., transcripts, depositions and test results.   Not finding contraband, doesn't mean it hasn't made it into the facility.

Conveniently missing from Defendant's statement of facts and affidavit is the fact that publishers are allowed to send in "paperback books, newspapers and/or publications. Some paperback books have over five hundred pages, are over 8 inches in length, 5 inches in width, and one inch thick. Defendants may counter with the answer that the publications come from the publisher, however, the publishers have people who make and pack the books. They give them to the USPS, Fed Ex, or UPS to deliver them. If persons in law offices have sent in contraband, or impersonated lawyers offices, nothing will stop someone from using publications, or delivery persons from using the vehicle of the book, magazine, newspaper or other periodicals to send in contraband. Regardless of the source, the publications still must be inspected as well. That has take to much longer than a simple letter in an envelope. This is a genuine dispute of material fact as there is no statistical data to prove Defendant's assertions.

10.    Plaintiff opposes and disputes that visitation and access to telephones are "alternatives" to   communication and expression. Telephone calls and visitations are other "forms" of communication, but, they are not alternatives. Neither Postcards, telephone conversations, nor visitation via telephonic video visits,   allow the Plaintiff to

give or even show photographs, pictures or drawings or other forms of expression and communication to inmates. This is a genuine disputed   fact as Defendant profits from collect calls and could be motivation to restrict letters in envelopes. Less letters equates to more collect calls. More collect calls means more money for the Defendant.

<div align="center">MEMORANDUM OF LAW</div>

I.     <u>Introduction</u>

      Plaintiff is a United States Citizen, resident of Palm Beach County, Florida, and is not incarcerated in the Palm Beach County Jail. Plaintiff attempted to mail a letter to a person incarcerated there in pre-trial status. The letter was returned with writing in red ink that read, "postcards only." (Ex. "G") There was no name, title or ID# of the person who rejected my letter, nor a chance to challenge the rejection as required by the ruling in <u>Procunier v. Martinez</u>, 94 S. Ct. 1800 (1974) Thus realizing that the Palm Beach County Sheriff's Office was not following case precedents and was actually enforcing the unconstitutional policy of postcards only, I exercised my right to obtain redress from the state court. Defendant removed this action to this Honorable Federal Court.

II.    <u>Summary Judgment</u>

      Summary judgment is proper if the evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rules of Civil Procedure 56(c). The movant bears the burden of establishing the absence of a dispute over a material fact. <u>Reynolds v. Bridgestone/Firestone, Inc.</u>, 989 F.2d 465, 469 *11th Cir. 1993) **The evidence and factual inferences made from the evidence are viewed favorably to the party opposing summary judgment.** <u>Reynolds</u>, 989 F.2d at 469. (emphasis supplied)

      Under summary judgment practice, the moving party bears the initial respon-sibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-323, 106 S.Ct. 2548 (1986)

<div align="center">11</div>

<u>DEFENDANT'S   POSTCARD ONLY POLICY-C.O.P 929.00</u>

As Defendant has stated, and Plaintiff admitted, Plaintiff is a free citizen not incarcerated in the Palm Beach County Jail. Contrary to Defendant's assertion, and supported by Defendant's own Corrections Operating Procedure(C.O.P.) 929.00/Inmate Mail Notice (Defendant's Ex. "A"), the Sheriff's policy violates First and Fourteenth Amendments Rights under the United States Constitution. Defendant claims that the policy should be "viewed as a limitation on the amount of paper (space) available to communicate in writing rather than a restriction on the message." Plaintiff couldn't disagree more. In addition to his Opposition and Specific Disputed Material Facts, Plaintiff will support his claims in this memorandum of law and show that there are obvious and easy alternatives to the regulation and a way to accommodate the right at a *de minimis* cost to the valid penological purpose, and preserve the security of the facility, using common sense and applicable statutes and case law.

Plaintiff reminds this Court that C.O.P. 929.00 limits non-privileged incoming mail to postcards which, include, but are not exhaustive,:

A. 1.    Acceptable Postcard Forms

a.       Postcards minimum size requirements are 3.5 inches by 5 inches (**as determined by USPS regulations).**
b.       Postcards maximum allowable size is 4.25 inches by 6 inches (**as determined by USPS regulations**).
c.       Postcards must be solid in color-no photos, art, or graphic design.
d.       Must be written or typed in black or blue ink only.
2.       Unacceptable Postcard Forms (pertinent/relevant parts)

a.       Defaced.
e.       Postcards with watermarks or stains.
h.       Oversized postcards.

As proven by Plaintiff, the USPS does not restrict postcards larger than the 4.25

inches by 6 inches as claimed by Defendant. See (Ex. "D") Additionally, by

being processed and handled by USPS employees, mail can and will sometimes get

defaced, stained and watermarked. USPS will deliver oversized postcards, as long as they

have the correct amount of postage. (Ex. "F" Declaration of Letter Carrier)

      Plaintiff's investigation and legal research in preparing for this matter has

discovered that there are no Federal or state laws limiting the vehicle for correspondence

and other items sent through the USPS. This includes the Code of Federal Regulations

(C.F.R.) The exception, of course, is that not only can the correspondence or item being

mailed not be illegal or dangerous to persons or property, but, the correspondence or

item sent cannot be, among other things, illegal, flammable, incendiary, poisonous, toxic,

or in any other way a danger to persons or property. Nor can Plaintiff find any case law

which addresses the vehicle for correspondence or items being sent into a correctional

facility or a civilian address. (more on this issue in the viable alternative section)

      First Amendment Constitutional protections include freedom of expression and

speech. While communication may be traditionally viewed as oral/speaking or writings

whether cursive or print, drawings, sketches, photographs and pictures are all forms of

speech and expression. The First and Fourteenth Amendments guarantee protection

against unjustified governmental interference with communications. <u>Lamont v.</u>

<u>Postmaster General</u>, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965) [If]  An inmate

does not lose his First Amendment rights simply by means of incarceration, *See*, <u>e.g.,</u>

<u>Cruz v. Beto</u>,405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972), obviously a "free

person" does not lose his rights by being free. Prison walls do not form a barrier

separating prison inmates for the protection of the Constitution, **nor do they bar free**

citizens from exercising their own constitutional rights by reaching out to those on the inside. Thornburgh v. Abbot, 490 U.S. 401, 407, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) (emphasis supplied)

   Had Defendant merely implemented a "postcard only" policy which limited mail to just postcards, and not impermissibly restricting size and the other arbitrary and unnecessary restrictions, it may have stood constitutional muster. However, by imposing the size requirements, color of writing, no photos, no art, and no graphic design, Defendant has unconstitutionally infringed upon Plaintiff's First Amendment Rights. Freedom of expression and speech, absent security threats and obscenity laws, cannot be suppressed. In the words of Chief Judge Kaufman, "the postal carrier may not be turned back at the jailhouse gate."   Wolfish v. Levi, 573 F.2d 118, 130 (2nd Cir. 1978), cert. granted, 439 U.S. 816, (1978) and judgment reversed on other grounds, 441 U.S. 520 (1978). The United States may give up the Post Office when it sees fit, but while it carries it on the use of the mails is almost as much a part of free speech as the right to use our tongues U.S. ex rel. Milwaukee Social Democratic Pub. Co. v. Burleson, 255 U.S.407, 437, 41 S.Ct. 352, 65 L. Ed. 704(1921) (Holmes, J., dissenting) (emphasis supplied)

   Plaintiff is not an inmate and disagrees and opposes Defendant's position that the constitutional analysis should be the same as it would be if the Plaintiff was an inmate. Plaintiff cannot be subjected to the same limitations which an incarcerated individual is, nor can this court use the same legal rationale in making a constitutional decision. However, the Plaintiff agrees with Defendant that the current case precedent governing this matter is dictated by Turner v. Safley, 482 U.S. 78, 89 (1987). Although the ruling

did not specifically address the rights of senders of mail into correctional facilities, it did

set forth factors to be considered in determining the reasonableness of a regulation.

Turner sets out a four-factor analysis to determine if a prison regulation limiting

the First Amendment is reasonably related to a legitimate penological interest. The first

factor requires a rational connection between the prison regulation and the legitimate

penological objective. Turner, 482 U.S. at 89.

Had the advent of corrections, i.e., jails, prisons, penitentiaries, stockades, been in

the past ten or twenty years, the postcard only policy may seem innovative and original.

However, being that jails, stockades and penitentiaries have been in this country

even before the Declaration of Independence was declared, this policy is not a rational

connection between the jail regulation and legitimate penological interest. And

considering that up until September 19, 2011, the Palm Beach County Jail allowed letters

mailed in with envelopes, what is the legitimate penological interest other than

punishment? Even the statement of facts for Defendant's motion for summary judgment

state that they receive "fake legal mail" containing contraband. Additionally, the

Affidavit of MICHELLEDeLAURA, page number 3 states that, "These types of incidents

have occurred and still occur through the use of fake legal mail as legal mail can be sent

into the facility in an envelope. Fire Rescue has responded to a number of suspicious

white powder incidences that occurred while opening incoming mail envelopes."

(emphasis supplied) As long as legal mail is coming inside, there will always be attempts

to introduce contraband. And the other source which Defendant does not mention in any

pleading or the affidavit, is "media" channels. If legal mail or "fake legal mail" can be

used to attempt to breach the jail, so can publications of paperback books, magazines,

newspapers, and other periodicals which are delivered to the jail. There is no way to determine if a book, magazine, or newspaper is coming from the publisher, or whether the business/person delivering it to the jail personnel has hidden contraband inside of it. Any newspaper, magazine or other periodical is going to have at least 40 pages. And according to Defendant's statement of facts and Affidavit, "All incoming mail is opened, inspected, and monitored to insure that there is no contraband, which includes illegal substances, contained in the mail. The mail is monitored for encoded messages, gang affiliations, criminal activity, security threats, and any other material which may disrupt the facility and pose a potential threat to security." Common sense dictates that it takes much longer to inspect a magazine, newspaper, and book longer than it would to inspect letters in envelopes. And how and why does a "publisher" have more First Amendment rights than the Plaintiff? How is a publisher allowed to provide his choice of color of ink, photos, pictures, sketches, drawings or graphic designs to an inmate recipient, but, the Plaintiff is prohibited from same?

Books, papers, magazines, and other periodicals offer more space for the placing and concealing of contraband than any personal letter contained in an envelope. However, with that stated, Plaintiff will concede that the postcard only policy is related to a legitimate penological interest, but, disagrees that it is a rational connection to a penological interest.

The next factor requires this Court to decide if there are alternative avenues for exercising the right. Id. at 90. The Defendant has offered that the postcard only policy is an alternative. It may be, if there weren't so many restrictions as contained in C.O.P. 929.00 A. 1. And 2. First and foremost, the USPS does not restrict the size of the

postcards as erroneously stated in the C.O.P.   Secondly, Defendant has not even attempted to state how the public safety or facility order and security are endangered by postcards which are not solid in color, contain photos, art or graphic design, are written or typed in ink other than blue or black ink, are defaced, or stained.

As stated earlier, if the requirement was just postcards, meaning a one piece card, regardless of size, color, photos, graphic designs, stains, defacing, or the color of the ink used to write the communication, Defendant may have a viable alternative. However, with so many restrictions, the "alternative" is not constitutional. Defendant's alternative restricts freedom of speech and freedom of expression. However, there are alternatives which will benefit both Defendant and Plaintiff. Defendant will be protected from the introduction of contraband and Plaintiff will get to exercise his Freedom of speech and expression guaranteed him under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 4 of Florida's Constitution.

The third factor is for this Court to evaluate the impact on guards, inmates and prison resources. <u>Turner</u> at 90. The term "guard" is both archaic and grammatically incorrect. Deputies who are sworn law enforcement officers, working as Correctional Officers, are assigned to the Palm Beach County Jail, not "guards."

Being as that staff are still opening, inspecting, and monitoring mail to insure no contraband, staff is not negatively impacted at all by allowing letters in envelopes to be received at the jail. As the affidavit of MICHELLE DeLAURA attests to, "...even the limitation regarding the use of a postcard for incoming general, non-privileged

17

mail has <u>not prevented all attempts to introduce contraband</u> into the facility."

Regardless of the source, as MICHELLE DeLAURA attested to in her Affidavit, "All incoming mail is opened, inspected,   and monitored to insure there is no contraband, which includes illegal substances, contained in the mail." So any and all vehicles of mail are subject to search and inspection.

The proposed solution Plaintiff has will show that there will be no added burden to jail staff and will almost assuredly   prevent any and all contraband from entering the facility and not increase the resources of the jail and allow Plaintiff to exercise his First Amendment Rights.

Defendant already has at least four persons assigned to the inspecting, and examining of incoming and outgoing mail, the alternative option which Plaintiff will propose will not have current employees performing any more tasks than they are already assigned to.

The impact on inmates would, of course, be elation. Allowed to receive some communication in it's entirety, instead of having to piece together a jigsaw puzzle of postcards. It surely won't discourage them to have correspondence in letter from.

Finally, the court must consider whether there are readily available alternatives that at de minimis cost could meet the prison's interests without sacrificing the plaintiff's free speech rights. Reminding this Court, Plaintiff is not an inmate and is not incarcerated in Defendant's Palm Beach County Jail, but, still maintain my First Amendment right to speech and expression, even to those persons incarcerated. As Justice Powell wrote, "[c]ommunication by letter is not accomplished by the act of Writing words on paper. Rather, it is effected only when the letter is read by the

addressee."Procunier v. Martinez, 416 U.S. 396, 94 S.Ct.1800, 40 L.Ed. 2d 224 (1974)

Just as with legal pleadings, contracts, and books, the communication by writing is a continuous and sequential flow. While Plaintiff isn't arguing substance, by limiting his written communication to postcards, it does have a chilling effect on his right to speech and expression. As human error has it, mail does sometimes get lost. If Plaintiff's communication is spread out over different postcards, one of the postcards may not be delivered to the inmate and thus the communication not conveyed.

As Plaintiff is a member of the community, he also shares an interest in public safety and facility order and security as well. Plaintiff is well aware of the challenges to security which correctional staff face on a daily basis. However, Plaintiff is also well aware that as long as there have been correctional facilities, there has been attempts to introduce contraband into correctional facilities. Staff, inmates, visitors, contractors, medical and other civilian personnel,   and religious associations among others have attempted, and unfortunately in some instances, succeeded in furnishing contraband to inmates. Mail is just another vehicle for it.

However, and interestingly, religious visitors still have contact with inmates as do attorneys, paralegals and investigators. Procunier v. Martinez, 94 S.Ct. 1800 (1974) This right is implemented through F.S. 901.24. Additionally, Florida Rules of Criminal Procedure do not even elude to the use of telephones. Unlike the movies and television shows, the accused does not have a "right" to a phone call. That is purely a luxury and at the discretion of the jail and law enforcement authorities. The jail must provide "reasonable means" to communicate with counsel, family, and friends, See Florida Rules of Criminal Procedure 3.130(b)(3).

Another consideration Defendant offers to this Court is the "alternative form of communication" of collect phone calls. Neither inmates nor civilians have a right to telephone calls, and neither do attorneys. Upon arrest, and incarceration, it is a privilege. Mail has been the only constant right maintained throughout the years and thousands of cases litigated regarding communication between inmates and persons on the outside.

Plaintiff believes the collect calls are promoted as Defendant makes a profit from the use of the phones to make collect calls. That is definitely not a valid rational connection between the prison regulation and legitimate governmental interest.

Plaintiff provides this Court with a readily available alternative that at de minimis Cost could meet the Defendant's interests without sacrificing Plaintiff's First Amendment Right to free speech and expression. While Plaintiff is not a small child who can only communicate to others by drawings, pictures and sketches, nor is he mentally disabled and can only use photographs to communicate who and what he is, or where he has been, Plaintiff should not be restricted in using those methods to communicate with incarcerated persons.

The postcard requirements and limitations are vague and not necessary to the Defendant's interest in security and invites jail employees to apply their own opinions in making decisions. Plaintiff has already shown that the postcards size limitations are not limits set up by the USPS and falsely represented by Defendant. The post office will Deliver any correspondence that is legal, not dangerous and has the correct postage. (see Ex.'s "D" - Postal Rates/Sizes and "F" Declaration) Additionally, mail, in the course of it going through the processing and delivering may acquire stains and defacing at no fault of the sender. Yet, this mail would be rejected by the Defendant. Defendant has

not shown why postcards are a danger to safety and security by restricting the color of

ink to blue or black, the size of the postcard, nor how postcards with photos or

graphic designs impair security and order.

The alternative is simple, easy and cost free. In a perfect world, banning any and

all mail in envelopes would be the answer. However, Congress has not outlawed the Post

Office and the United States Supreme Court still allows free citizens to correspond

with incarcerated persons. As MICHELLE De LAURA'S Affidavit proves, "fake legal

mail" is still coming in with attempts at introducing contraband. Additionally, she made

a statement regarding "white powder scares."   Again, those scares haven't been enough

for Congress or the Courts to discontinue mail so in reality, it only takes one envelope

of a lethal substance to wipe out all of the previous instances of "safe" enveloped mail.

And, taking into account that Defendant has not even supplied one specific instance

where a dangerous powder effected a single person with any type of injury, the unknown

powdery substance argument fails.

It seems that Defendant's biggest argument, besides the "fake legal mail" which

cannot be stopped, are "greeting cards" and envelopes. Plaintiff agrees with Defendant

that the cards and envelopes are the biggest threat and source of hidden contraband.

Plaintiff reminds this Court of his earlier statement regarding the "vehicles" for

correspondence. "Communication" is protected. Procunier at 408. The vehicle/envelopes

ARE NOT protected. Inmates are not entitled to receive the envelope, only the

communication.

Inmate Requests to chaplains, medical, psychology, support services, are

delivered and returned to inmates on a daily basis. They don't use envelopes for them so

there is no need for outside correspondence to be delivered in their envelopes they are received in.

      This Court should also remember that the majority of inmates incarcerated at the Palm Beach County Jail are pre trial and have not been convicted of a crime and yet are already being punished with the postcard only policy. Even convicted felons in the Florida Department of Corrections are allowed to receive mail in envelopes. (Ex. "I")

<u>Plaintiff's Proposal</u>

1,     Defendant could institute a policy requiring ALL "correspondence" AND envelopes to contain the senders name, address AND inmates name and jacket number..

2.     All correspondence must be in either plain white copy paper or lined paper, No larger than 8 ½ x 11 inches.

3.     No correspondence may contain more than four sheets of paper, including the paper containing photocopied photographs, drawings or pictures.

4.     NO greeting cards are permitted for any inmate or any reason.

5.     Any photographs must be photocopied and no more than   three (3)

6.     All envelopes will be discarded and thrown away (recycled)

7.     All photographs, drawings and pictures will adhere to court rulings, laws, and valid jail restrictions, including, but not limited to, no acts of violence, gang affiliations, pornography, escape or disturbance.

8.     Any color of ink may be used.

(Any other valid and legal rule which Defendant needs to ensure safety and order.)

      With all the above in mind, Plaintiff implores this Court to provide all or some of

22

the alternatives proposed. It is not Plaintiff's wish to endanger any person working,

visiting, or incarcerated at Defendant's Jail. Plaintiff just wants to be able to be able

to exercise his rights guaranteed him by the First and Fourteenth Amendments in his

written communications to incarcerated persons at the Palm Beach County Jail.

A review of Plaintiff's Complaint shows that he never asked for any type of

"unspecified monetary damages" as erroneously stated by Defendant. This issue has

nothing to do with financial damages and no money can cure the wrong which Plaintiff

suffers every day that this unconstitutional policy is in effect. Plaintiff does not seek

money of any amount in this matter.

This Court has been provided with all the facts, case law and alternatives for him

to DENY Defendant's Motion for Summary Judgment and allow this matter to proceed to

trial.

WHEREFORE, for all of the reasons stated above, the exhibits referred to, and

the case law provided, Defendant's Motion for Summary Judgment should be dismissed.

RICHARD CLYDE ALTHOUSE, Pro Se
505   ½ Plymouth Road
West Palm Beach, Florida 33405

## CERTIFICATE OF SERVICE

I do certify that a copy of the foregoing has been delivered by U.S. Mail to Mr.
RICHARD A. GIUFFREDA, Esquire, of PURDY, JOLLY, GIUFFREDA &
BARRANCO,P.A., 2455 East Sunrise Boulevard, Suite 1216, Fort Lauderdale, Florida,
33404, on the 5th day of November, 2012.

RICHARD CLYDE ALTHOUSE, Pro Se

EXHIBIT
" A "

# INMATE MAIL

## EFFECTIVE September 19, 2011

All incoming mail, with the exception of privileged mail, must be in the form of a <u>postcard</u> only. Letters contained within envelopes will not be accepted and will be returned to the sender.

All postcards must meet the following requirements:

- Postcard minimum size* – 3.5 inches by 5 inches.
- Postcard maximum size* – 4.25 inches by 6 inches.
- Postcards must be **solid color** – no photos, art, or graphic designs.
- Postcards must be hand written or typed in black or blue ink.

Acceptable Monies may still be mailed to inmates in an envelope if properly addressed to the facility.

*Postcards sizes are determined by USPS regulations.

EXHIBIT

"  B  "

| ⭐ Palm Beach County Sheriff's Office Corrections Operating Procedures | | C.O.P.# 929.00 | Page 1 of 3 |
|---|---|---|---|
| SUBJECT: Inmate Correspondence | | | |
| INDEX AS: Mail | | | |

| ISSUED DATE: 01/04/77 | EFFECTIVE DATE: 01/04/77 | REVISION DATE: 07/11 | REFERENCE: ACA – 4 ALDF 2A-60, 5B-05, through 5B-10 FCAC- 12.03 through 12.08 FMJS- 9.03 |
|---|---|---|---|

I. **PURPOSE:** The purpose of this Corrections Operating Procedure is to establish control guidelines for all incoming and outgoing inmate mail.

II. **SCOPE:** This Corrections Operating Procedure applies to all Sheriff's Office personnel assigned to the Department of Corrections.

III. **DISCUSSION:** All inmates are encouraged to maintain ties with their families and friends. There is no limitation on the volume of lawful mail, except for packages and publications, certain content or source of the mail, or when such limitations are necessary to protect public safety or facility order and security. All inmate mail entering or leaving the facility shall be processed by the facility's designated mail personnel.

IV. **DEFINITIONS:**

    A. <u>Indigent Inmate</u>- an inmate who enters the facility without funds or has depleted the funds of their inmate account, and does not receive funds during the most recent two week period.

    B. <u>Kiting</u>- is outgoing mail which includes written material and/or other outgoing mail not specifically intended for the addressee identified on the outside of the envelope.

    C. <u>Privileged Mail</u>- is mail clearly identified as being sent between an inmate and their attorney, the courts, or public officials.

V. **PROCEDURES:**

    A. Incoming Mail – All incoming mail, except legal mail and other specially approved items, must be in postcard form.

        1. Acceptable Postcard Forms

            a. Postcards minimum size requirements are 3.5 inches by 5 inches (as determined by USPS regulations).

            b. Postcards maximum allowable size is 4.25 inches by 6 inches (as determined by USPS regulations).

            c. Postcards must be solid color – no photos, art, or graphic designs.

            d. Must be written or typed in black or blue ink only.

        2. Unacceptable Postcard Forms

            a. Defaced.

            b. Plastic or wrappings on postcards.

            c. Postcards marked with paint, crayons or markers.

            d. Postcards with labels or stickers.

            e. Postcards with watermarks or stains.

            f. Postcards with any biohazards, including perfumes or lipstick

            g. Postcards depicting nudity, weapons or gang references

            h. Oversized postcards.

3. Monies may be mailed to inmates in an envelope addressed to the inmate's approved mailing address and must state the inmate's booked name and jacket number. CASH WILL NOT BE ACCEPTED. Any correspondence included with checks, money orders, or otherwise approved mail, will not be delivered to inmates. Monies must be in one of the following forms:
   a. Money Orders
   b. Checks from government agencies
   c. Checks from privately run jails or prisons payable in U.S. Funds.

4. There shall be no approved list of correspondents, or limit on the volume of mail an inmate may receive although inmate to inmate correspondence is prohibited.

5. Mail not properly addressed to the inmate will be returned to the sender.

6. Mail may be monitored to ascertain if it contains any attempts at escape, security violations, or conspiracy to introduce contraband, but shall not be censored.

7. Mail may be inspected to intercept cash, checks, money orders and contraband. Aside from contraband, a receipt will be given to the inmate for these items.

8. Inmates will be notified in writing explaining the reasons why any part or all of their properly addressed mail was rejected.

9. Inmates may receive packages which have been pre-approved by the facility commander.

10. Mail may be held for no longer than twenty-four (24) hours and packages for no more than forty-eight (48) hours, excluding weekends and holidays; for the inspection for contraband.

11. Postage stamps are removed from incoming mail.

12. Mail shall be delivered to the inmate personally by staff members without unnecessary delay.

13. Mail addressed to an inmate no longer in custody at the facility will be returned to the sender.

14. Inmates in special management units can write and receive mail on the same basis as inmates in the general population.

B. Privileged Mail - Inmates are permitted to send sealed letters to a specified group of persons and organizations, such as courts, counsel, officials of the confining authority, state and local chief executives, administrators of grievance systems, and members of the paroling authority. Staff, in the presence of the inmate, may be allowed to inspect the outgoing privileged mail for contraband before it is sealed. Mail to inmates from this specified group of persons and organizations may be opened only to inspect for contraband and only in the presence of the inmate, unless waived in writing, or in circumstances which may indicate contamination. Outgoing privileged mail shall not be opened but may be held for a reasonable period of time, not to exceed seventy-two (72) hours, pending verification that it is properly addressed to the person or agency referred to on the envelope.

C. Magazines, Newspapers and Periodicals:

1. Facility commanders shall determine the amount of reading material, including books, periodicals and other publications that an inmate may store at any one time within his or her personal living area which do not create a fire safety, or sanitation hazard, or by its nature or content poses a threat to the security, good order or discipline of the facility or facilitates criminal activity.

2. Restrictions limiting the quantity and contents of magazines, newspapers, periodicals or other publications include, but are not limited to:
   a. Inmates may subscribe to no more than one daily or weekly newspaper and four periodicals. Inmates subscribe to periodicals or other reading materials at their own risk and expense. Inmates will not be reimbursed by the Sheriff's Office for materials which are rejected.
   b. No inmate shall be allowed to receive or keep more than one copy of any volume, issue or edition of any book, periodical or other publication.

| C.O.P. # 929.00 | Page 3 of 3 |
| --- | --- |

    c.    Inmates will not be allowed to receive any type of information depicting instructions for the manufacture of explosives, weapons, chemicals, drugs, or alcohol. Nor may they receive material which is violent, criminal, and sexually explicit, depicts nudity or depicts racial, religious, or national hatred, or materials that are disruptive to the facility and pose a potential threat to security.

    3.    Questions concerning the admissibility of the material shall be brought to the attention of the Facility Commander, or designee, for determination.

D.    Indigent inmates will be provided with writing materials and postage to correspond with their attorneys, the courts and public officials upon written request, and to their families and friends not to exceed 2 letters a week. Bartering these supplies is subject to disciplinary action.

E.    Outgoing Mail:

    1.    There shall be no approved list of correspondents, or limits on the volume of mail inmates may send, and are received daily by staff members although inmate to inmate correspondence is prohibited.

    2.    Outgoing mail will not be interfered with, but may be inspected when reasonable suspicion exists to determine if the letter contains anything that could be seen as a threat to the facility security or rule violation, escape plans, blackmail, extortion, kiting, threats of violence, or coded messages.

    3.    Outgoing mail is not normally held, or censored, and will not be sealed by the inmate prior to receipt by the facility.  Should reasonable suspicion exist to indicate the mail is being used in violation, letters may be held for no more than twenty-four (24) hours, and packages, no more than 48, excluding weekends and holidays, to allow for inspection.

    4.    Inmates shall be notified in writing explaining the reasons why any outgoing mail was rejected.

    5.    All outgoing mail shall be stamped with the following disclaimer statement: "Attention:  This letter originates from the Palm Beach County Jail. Inmate mail is not censored. The Sheriff cannot assume responsibility for its contents."

F.    Contraband Control and Disposition:

    1.    In the event contraband is found in inmate mail, the mailroom supervisor should be immediately notified for further action.

EXHIBIT

"( C )"



| Palm Beach County Sheriff's Office Corrections Operating Procedures | C.O.P.# 929.00 | Page 1 of 3 |
|---|---|---|

**SUBJECT: Inmate Correspondence**

**INDEX AS: Mail**

| ISSUED DATE: | EFFECTIVE DATE: | REVISION DATE: | REFERENCE: |
|---|---|---|---|
| 01/04/77 | 01/04/77 | 10/09 | ACA – 4 ALDF 2A-60, 5B-05, through 5B-10<br>FCAC- 12.03 through 12.08<br>FMJS- 9.03 |

I.  **PURPOSE:**  The purpose of this Corrections Operating Procedure is to establish control guidelines for all incoming and outgoing inmate mail.

II.  **SCOPE:**  This Corrections Operating Procedure applies to all Sheriff's Office personnel assigned to the Department of Corrections.

III.  **DISCUSSION:**  All inmates are encouraged to maintain ties with their families and friends.  There is no limitation on the volume of lawful mail, including letters, packages and publications, content or source of the mail, except when such limitations are necessary to protect public safety or facility order and security.  All inmate mail entering or leaving the facility shall be processed by the facility's designated mail personnel.

IV.  **DEFINITIONS:**
    A.  <u>Indigent Inmate</u>- an inmate who enters the facility without funds or has depleted the funds of their inmate account, and does not receive funds during the most recent two week period.
    B.  <u>Kiting</u>- is outgoing mail which includes written material and/or other outgoing mail not specifically intended for the addressee identified on the outside of the envelope.
    C.  <u>Privileged Mail</u>- is mail clearly identified as being sent between an inmate and their attorney, the courts, or public officials.

V.  **PROCEDURES:**
    A.  Incoming Mail:
        1.  There shall be no approved list of correspondents, or limit on the volume of mail an inmate may receive.
        2.  Mail not properly addressed to the inmate will be returned to the sender.
        3.  Mail may be monitored to ascertain if it contains any attempts at escape, security violations, or conspiracy to introduce contraband, but shall not be censored.
        4.  Mail may be inspected to intercept cash, checks, money orders and contraband.  A receipt will be given to the inmate for these items.
        5.  Inmates will be notified in writing explaining the reasons why any part or all of their properly addressed mail was rejected.
        6.  Inmates may receive packages which have been pre-approved by the facility commander.
        7.  Letters may be held for no longer than twenty-four (24) hours and packages for no more than forty-eight (48) hours, excluding weekends and holidays, for the inspection for contraband.
        8.  Postage stamps are removed from incoming letters/mail.
        9.  Mail shall be delivered to the inmate personally by staff members without unnecessary delay.
        10.  Mail addressed to an inmate no longer in custody at the facility will be returned to the

11.    Inmates in special management units can write and receive letters on the same basis as inmates in the general population.

B.    Privileged Mail- Inmates are permitted to send sealed letters to a specified group of persons and organizations, such as courts, counsel, officials of the confining authority, state and local chief executives, administrators of grievance systems, and members of the paroling authority. Staff, in the presence of the inmate, may be allowed to inspect the outgoing privileged mail for contraband before it is sealed. Mail to inmates from this specified group of persons and organizations may be opened only to inspect for contraband and only in the presence of the inmate, unless waived in writing, or in circumstances which may indicate contamination. Outgoing privileged mail shall not be opened but may be held for a reasonable period of time, not to exceed seventy-two (72) hours, pending verification that it is properly addressed to the person or agency referred to on the envelope.

C.    Magazines, Newspapers and Periodicals:

1.    Facility commanders shall determine the amount of reading material, including books, periodicals and other publications that an inmate may store at any one time within his or her personal living area which do not create a fire safety, or sanitation hazard, or by its nature or content poses a threat to the security, good order or discipline of the facility or facilitates criminal activity.

2.    Restrictions limiting the quantity and contents of magazines, newspapers, periodicals or other publications include, but are not limited to:

a.    Inmates may subscribe to no more than one daily or weekly newspaper and four periodicals. Inmates subscribe to periodicals or other reading materials at their own risk and expense. Inmates will not be reimbursed by the Sheriff's Office for materials which are rejected.

b.    No inmate shall be allowed to receive or keep more than one copy of any volume, issue or edition of any book, periodical or other publication.

c.    Inmates will not be allowed to receive any type of information depicting instructions for the manufacture of explosives, weapons, chemicals, drugs, or alcohol. Nor may they receive material which is violent, criminal, sexually explicit, or depicts racial, religious, or national hatred, or materials that are disruptive to the facility and pose a potential threat to security.

3.    Questions concerning the admissibility of the material shall be brought to the attention of the Facility Commander, or designee, for determination.

D.    Indigent inmates will be provided with writing materials and postage to correspond with their attorneys, the courts and public officials upon written request, and to their families and friends not to exceed 2 letters a week. Bartering these supplies is subject to disciplinary action.

E.    Outgoing Mail:

1.    There shall be no approved list of correspondents, or limits on the volume of mail inmates may send, and are received daily by staff members.

2.    Outgoing mail will not be interfered with, but may be opened and inspected when reasonable suspicion exists to determine if the letter contains anything that could be seen as a threat to the facility security or rule violation, escape plans, blackmail, extortion, kiting, threats of violence, or coded messages,

3.    Outgoing mail is not normally held, or censored, and may be sealed by the inmate prior to receipt by the facility. Should reasonable suspicion exist to indicate the mail is being used in violation, letters may be held for no more than twenty-four (24) hours, and packages, no more than 48, excluding weekends and holidays, to allow for inspection.

4.    Inmates shall be notified in writing explaining the reasons why any outgoing mail was rejected.

5.    All outgoing mail shall be stamped with the following disclaimer statement:
"Attention: This letter originates from the Palm Beach County Jail. Inmate mail is not censored. The Sheriff cannot assume responsibility for its contents."

| C.O.P. # 929.00 | Page 3 of 3 |
| --- | --- |

F.      **Contraband Control and Disposition:**
In the event contraband is found in inmate mail, the mailroom supervisor should be immediately notified for further action.

EXHIBIT

"D"

**USPS.COM**

Quick Tools

Ship a Package

Print a Label with Postage
Schedule a Pickup

Order Free Boxes

Buy Shipping Supplies

Calculate a Price

Look Up a ZIP Code™

Get help to...

Add Insurance & Extra Services

Compare Services & Prices

Why Choose USPS?

Express Mail®

Express Mail Flat Rate™
Envelope

Priority Mail®

Priority Mail Flat Rate™

Prepaid Forever® Priority Mail
Flat Rate™

Priority Mail Regional Rate™

First-Class Mail®

Parcel Post®

Media Mail®

Global Express Guaranteed®

Express Mail International®

Express Mail International Flat
Rate™ Envelope

Priority Mail International®

Priority Mail International Flat
Rate™

First-Class Mail International™

Airmail M-Bags

Prepare Domestic Shipments

Prepare International Shipments

File an Insurance Claim

# First-Class Mail®

First-Class Mail is a fast and affordable service for envelopes and packages weighing up to
13 oz. Delivery is in 3 days or less. It's perfect for personal correspondence, bills, and light
merchandise.

**Features**

- Delivery within 3 days in most cases
- Our best priced service for mail up to 13 oz
- Can be combined with extra services to confirm
  delivery

Postcards from 29¢
1-oz letters are 44¢

*Meeting the criteria for postcard/letter price

**Still Have Questions?**
Browse our FAQs ›



| Pricing | Extra Services | Rules & Restrictions |
| --- | --- | --- |

**Postcards**



- Must be rectangular.
- Minimum size of 5" long x 3 1/2" high x 0.007" thick.
- Maximum size is 6" long x 4 1/4" high x 0.016" thick.
- Postcards over 6" long x 4 1/4" high x 0.016" thick will be charged as a letter or large envelope, depending on size.

**Letters**

EXHIBIT

"E"







SECTION $. Freedom of speech and press. Every person may speak, write and publish sentiments on all subjects but shall be responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions and civil actions for defamation the truth may be given in evidence. If the matter charged as defamatory is true and published with good motives, the party shall be acquitted or exonerated. First Amendment Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.Article XIV All born or naturalized in the United States, and subject to the jurisdiction thereof, are Citizens of the United Statesand of the State wherein they reside. No State shall make or enforceany law which shall abridge the privileges or immunities of citizens of the United States; nor shall any any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protections of the laws.





EXHIBIT

"  F  "

## DECLARATION OF KIM R. VAN COURT

STATE OF FLORIDA       )

COUNTY OF PALM BEACH )

1.      My name is KIM R. VAN COURT.

@.      I am over eighteen (18) years of age.

3.      I am a City Letter Carrier for the United States Postal Service and have served in that capacity for approximately fourteen (14) years.

4.      I have been delivering mail in Palm Beach County for over seven (7) years.

5.      In the course of my receiving and delivering mail, I have personally delivered postcards which have been marked return to sender or return to writer which had been addressed to inmates at the Palm Beach County Jail.

6.      Attached to my affidavit are photocopies of some of the postcards which have been returned for various reasons, including:

> (aa) not a postcard;
> (bb)  no lined postcards;

> The sender used index cards as a postcard and the jail rejected them and returned them to sender.

7.      I have no specific count, but, estimate that I have returned over fifty (50) postcards for various reasons including, but not limited to, (1) not a postcard, (2)no lined postcard, (3) postcard had red ink, (4) postcard had blue and black ink.

8.      Absent the mailed item being dangerous or prohibited by law or postal regulations, I am required to deliver any item that has the correct postage attached, this includes oversized postcards.

9.      I have received mail to be delivered to my customers that have stains on them, have been defaced due to rain, mud, paint, or other substances due to processing at the main distribution center, other mail contaminating it, or even being dropped on the street, grass or in my truck prior to it's delivery.

Under penalties of perjury, I declare that I have read the foregoing declaration and that the facts stated in it are true.

KIM R. VAN COURT
Post Office Box 18201
West Palm Beach, Florida 33416

11-4-2012
Dated

Exhibit from declaration of KIM R. VAN COURT, city letter carrier.

Exhibit "aa" showing the front of postcard. (index card)



Exhibit from declaration of KIM R. VAN COURT, city letter carrier.

Exhibit "bb" showing the rear of postcard.



Exhibit from declaration KIM R. VAN COURT, city letter carrier.

Exhibit "aa" showing the rear of postcard. (index card)

---

Hey Nick
I not going to ask how you
are. I could only imagine I spoke
to your lawyer and got it set
up with him also I set up
tactics for my phone Victoria
sent you the number to call. Im
sorry it took so long but the
post cards we sent you were
returned I hope these aren't.
I will write you again soon
or hopefully talk
Love
DaD

Exhibit from declaration of KIM R. VAN COURT, city letter carrier.

Exhibit "bb" showing the rear of postcard. (index card)

---

MeRRy Christmas Baby ♡ DEC 24
So I think its safe to say me & you got
the best christmas gift ever this year!
Are little angel & knowing he/she is healthy &
doing ok! I really had hoped I'd be
able to come see you on christmas but
your list isnt made yet hunnie. So get on
that boobie k? We all miss you soso
much Nicholas and cant wait for you to
come home this lawyer of yours is really
doing everything he can baby. So keep
your sexi head up :) k? I know you'll be
ok. Your my little tough guy boobie just stay
strong baby & call your dads cell he made
it so you can ok! I love you hubby ♡ Always.

EXHIBIT

"  G  "

G-16.   MARRIAGES
Request for marriage must be submitted to the Corrections Chaplain. The marriage of an inmate, while incarcerated, may be permitted provided there is no cost to the Palm Beach County Sheriff's Office, and there is no violation of security and/or safety of staff or inmates.

G-17.   DEATH OF A FAMILY MEMBER
In the event of a death of a verifiable immediate family member (spouse, child, mother, father, sister, brother), and you are granted permission by the division commander to attend the funeral service, certain requirements must be met. You must be escorted by two (2) deputies to and from the service at a rate of pay determined by the Sheriff's Permit Office (you are responsible for this payment). All funds must be on deposit with the Sheriff's Office twenty four (24) hours prior to leaving for the service.

G-18.   NEXT OF KIN NOTIFICATION
Serious injury or illness can happen to anyone at any time, whether you are at home, work, play, or in a detention facility. During the booking process you were asked three different times to identify a family member, friend or other person you want us to notify in the event of a serious injury, illness or death. If you want to change the person you want notified, or if you did not list someone at the time of booking, send an INMATE REQUEST FORM to the Classification Section.

G-19.   INMATE FEES FOR SUBSISTENCE
All inmates, except for federal inmates as stipulated in contract, will be required to pay a subsistence fee cost, associated with their incarceration (FSS 951.033). A onetime per incarceration processing fee will be charged to all inmates entering the Palm Beach County Detention facilities. This charge will assist with the cost of inmate processing and inmate uniforms, etc. This onetime fee is in addition to any daily subsistence fee. The processing will be charged when the inmate is booked into the system. Inmates participating on work release or house arrest will pay a daily subsistence in accordance with the most recent resolution from the Board of County Commissioners.

G-20.   INMATE MOVEMENT
Inmates must be in a single file line when escorted throughout the facility; for example, court, recreation, church services, visitation, medical, etc. You may be required to be in restraints during such movement.

G-21.   SELF HELP GROUPS
A variety of programs to assist with personal growth are available to inmates, such as, Alcoholics Anonymous (AA) and Narcotics Anonymous (NA). Check the inmate programs schedule for your facility. Ask the deputy assigned to your unit for enrollment procedures.

G-22.   VOTERS PROGRAM
Assistance will be given to any eligible inmate wishing to vote through absentee ballot or wishing to register to vote. You are eligible to vote or register to vote if

EXHIBIT
"H"



Richard Clyde Althouse
Post Office Box 6565
West Palm Beach, Florida 33405

postmark
only

The Palm Beach County Jail
Inmate WEST, Quinton Jacket # 0325312
Post Office Box 24716   S-10-C
West Palm Beach, Florida 33416

USA FIRST-CLASS FOREVER



# "I"

**33-210.101 Routine Mail.**

(1) The provisions of this section shall apply to routine mail. Routine mail is all inmate mail, except legal mail (see Rule 33-210.102, F.A.C.), privileged mail (see Rule 33-210.103, F.A.C.), and publications (see Rule 33-501.401, F.A.C.).

(2) Inmates will be permitted to receive only the following types of materials through routine mail:

(a) Written correspondence (no limit as to number of pages). Correspondence shall be written in either English or Spanish. Inmates who cannot read and write in English or Spanish shall request approval from the warden to correspond and receive correspondence in the language which the inmate can read and write using Form DC6-236, Inmate Request. The warden shall approve such requests when there are department staff who can translate the correspondence or when it is otherwise possible to obtain translation services at de minimus cost to the Department. Correspondence may be written on greeting cards, but cards containing electronic or other non-paper parts, cards that are constructed in such a way as to permit concealment of contraband, or cards that are larger than 8"x10" will not be permitted. Form DC6-236 is incorporated by reference in Rule 33-103.019, F.A.C.

(b) Up to 15 pages of additional written materials, unless the additional written materials pertain to an inmate's legal case, health, or other significant issues and prior approval is obtained from the warden to send in an enclosure of greater than 15 pages. Each page can be no larger than 8 1/2" x 14" in size; material can be on both sides of a page. This does not include publications, which shall be handled pursuant to Rule 33-501.401, F.A.C. Individual articles or clippings from publications the content of which is otherwise admissible are permissible, up to the 15 page limit. No item can be glued, taped, stapled or otherwise affixed to a page. Requests to send enclosures of greater than 15 pages shall be made to the warden or designee prior to sending the material. Exceptions to the 15 page limitation are intended for enclosures concerning legal, medical, or other significant issues, and not for material for general reading or entertainment purposes. The warden shall advise the sender and the mail room of his approval or disapproval of the request.

(c) Photographs. Photographs will be counted toward the 15 page additional materials limitation. Nude photographs or photographs that reveal genitalia, buttocks, or the female breast will not be permitted. Polaroid photographs will not be permitted. Photographs will not exceed 8" x 10".

(d) Self-addressed stamped envelopes. These items do not count toward the 15 page limitation for additional materials, but cannot exceed the equivalent of 20 (1 oz.) first class stamps.

(e) Unused greeting cards (no larger than 8" x 10"), stationery or other blank writing paper (lined or unlined), or envelopes. These items do not count toward the 15 page limitation for additional materials, but cannot exceed 10 each in number. Card stock, sketch paper, and other types of craft paper may not be included.

(f) U.S. postage stamps. The value of the stamps cannot exceed the equivalent of 20 (1 oz.) first class stamps. These items do not count toward the 15 page limitation for additional materials. Inmates shall not possess more than the maximum number of stamps permitted by Rule 33-602.201, F.A.C. Due care shall be exercised in processing mail; however, the department shall not be responsible for any postage stamps sent through the mail.

(3) No other items may be received through incoming routine mail. If an impermissible item is found (other than items of an illegal nature) the entire correspondence will be returned to the sender pursuant to subsection (14) of this rule. For example, the following items are not permissible for inclusion in or attachment to routine mail:

(a) Non-paper items;

(b) Items of a non-communicative nature such as lottery tickets or matchbooks;

(c) Stickers or stamps (other than postage stamps, postal service attachments, and address labels affixed to the outside of the mailing envelope);

(d) Address labels (other than those affixed to the outside of the mailing envelope); or

(e) Laminated cards or other laminated materials.

(4) Inmates shall be responsible for informing correspondents of the regulations concerning incoming routine mail.

(5) Any routine mail sent or received shall be opened, examined, and is subject to being read by a designated employee. If the warden has approved an inmate to receive correspondence written in a language other than English or Spanish the correspondence may be translated to confirm that it complies with the applicable rules. If the language cannot be translated by an employee at the facility the correspondence may be photocopied and sent to another institution or the central office for translation. Outgoing mail shall not be sealed by the inmate sender. Incoming and outgoing mail that is properly addressed and otherwise in compliance with applicable rules shall not be held for processing for more than 48 hours of receipt by the mail room, excluding weekends and holidays.