UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80135-CIV-MARRA

RICHARD CLYDE ALTHOUSE,

    Plaintiff,

v.

PALM BEACH COUNTY SHERIFF'S OFFICE,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant's Motion for Summary Judgment (and Memorandum of Law) (DE 25). Plaintiff responded (DE 26). Defendant replied (DE 30). The Court has considered the briefs of the parties and is otherwise advised in the premises.

### I. Background

Contraband smuggling in prison is an intractable problem. To solve it, corrections officers in Palm Beach County detention facilities—which house approximately 3,000 inmates—open and inspect all non-privileged incoming inmate mail to ensure that it does not contain contraband such as weapons or drugs. (DE 25, Attach. 2: Michelle De Laura Aff. ¶ 4 [hereinafter "De Laura Aff."]). The property section of the Inmate Management Division of the Palm Beach County Sheriff's Office processed approximately 11,000 letters per month from 2008 through 2011. (De Laura Aff. ¶ 4). There are generally four corrections officers responsible for processing this mail. (De Laura Aff. ¶ 4).

On September 19, 2011, the Palm Beach County Sheriff's Office implemented a "postcard only" policy to address concerns over inmates' receipt of contraband in envelopes. The policy

provides, in pertinent part, that "[a]ll incoming mail, except legal mail and other specially approved items, must be in postcard form." (DE 25, Attach. 1 at 2: Palm Beach County Sheriff's Office Corrections Operating Procedures #929.00). Inmates may receive an unlimited number of postcards without any restriction on their content; but the postcards must be between 3.5 x 5 inches and 4.25 x 6 inches, they must be solid color (no photos, art, or graphic designs), and they must be written or typed in blue or black ink only. According to the Sheriff's Office, there have been fewer incidents of persons attempting to introduce contraband in envelopes since the implementation of the policy.[1] Despite the postcard policy, inmates are allowed to visit with family and friends, they have to access telephones to make collect calls, and they can receive an unlimited amount of written correspondence (as long as it conforms with the postcard only policy).

Plaintiff, who is proceeding *pro se* as an unincarcerated citizen, challenges the Sheriff's Office's postcard policy as an unconstitutional restriction on his freedom of speech in violation of the First and Fourteenth Amendments to the United States Constitution and Article I, Section 4 of the Florida Constitution.[2] Plaintiff seeks a declaratory judgment and injunctive relief.

The Defendant Sheriff's Office moves for summary judgment on the ground that the policy is reasonably related to legitimate penological interests based on the standards set forth by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). In support of its motion, the Sheriff's Office

---

[1] Plaintiff disputes this assertion because neither the Sheriff's Office's motion nor the affidavit that accompanies it gives any figures for incoming mail since the Office implemented the policy.

[2] While Plaintiff's Complaint does not reference § 1983 as the vehicle for his claim, the Court interprets this action as being brought under that statute. Moreover, the Court notes that "[t]he scope of the protection accorded to freedom of expression in Florida under article I, section 4 is the same as is required under the First Amendment." *Dep't of Educ. v. Lewis*, 416 So. 2d 455, 461 (Fla. 1982). Because the analysis of Plaintiff's rights is the same under either the Florida or Federal Constitution, the Court proceeds with a federal analysis.

provides the affidavit of Michelle De Laura, who has been employed by the Sheriff's Office for approximately twenty years as the Section Manager of the property section in the Inmate Management Division. De Laura states:

> [The detention facilities] were continually receiving greeting cards contained in envelopes that consisted of multiple layered parts. Senders placed drugs, tobacco, money, and other contraband items between the layers of the card and glued the layers together in an attempt to conceal the hazardous items within an envelope. It was also common for the mail staff to discover drugs and drug paraphernalia concealed in the seams of an envelope. Often, senders would include a small stack of multiple page letters in an envelope where they would hide contraband between the pages. There have been numerous incidences where drugs, tobacco, money, metal pins, and other dangerous contraband have been located while opening and inspecting letters arriving in envelopes. These types of incidents have occurred and still occur through the use of fake legal mail as legal mail can be sent into the facility in an envelope. Fire Rescue has responded to a number of suspicious white powder incidences that occurred while opening incoming mail envelopes. The occurrence of a chemical biological incident (white powder incident) results in a facility shutdown and all inmate movement ceases. This affects the inmates, the staff, the general public, the court system, and every other entity associated with the detention facility.
>     Since the implementation of the postcard only incoming general mail policy, the number of incidences involving attempts to introduce contraband into the facility by way of an envelope containing cards or multiple pieces of paper has greatly diminished. However, even the limitation regarding the use of a postcard for incoming general, non-privileged mail has not prevented all attempts to introduce contraband into the facility.

De Laura's affidavit lists numerous pre-postcard policy instances where marijuana was found hidden in incoming mail, anniversary and greeting cards, and fake legal mail; pills were found hidden in crumbled pieces of paper; needles and a razor blade were found in incoming mail; and other suspicious powders and substances were found. (De Laura Aff. ¶ 4).[3] According to De Laura

---

[3] De Laura attached to her affidavit photographs of some of the contraband discovered in envelopes prior to the postcard policy being implemented. Plaintiff moves to strike the photographs and most of the sworn statements in De Laura's affidavit under Federal Rule of Civil Procedure 56(c)(2) on the ground that they cannot be presented in a form that would be admissible as evidence. (DE 27). The Court denies Plaintiff's motion because De Laura's affidavit is based on her personal knowledge, which she acquired as an employee of the Sheriff's Office for twenty-six years. Moreover,

and the Sheriff's Office, having to open envelopes physically to inspect the contents of incoming mail increases the possibility that contraband could be introduced into the jail facility through human error; proscribing the use of envelopes would reduce the introduction of contraband because inspecting postcards is less time consuming and easier to process.

Plaintiff opposes the Sheriff's Office's position on several grounds. First, Plaintiff argues that the size, photo, and ink color restrictions of the postcard policy are arbitrary and serve no legitimate penological interest. Second, Plaintiff disputes the Sheriff's Office's suggestion that the postcard policy has been effective, i.e., has reduced the amount of contraband introduced in envelopes. Third, Plaintiff opposes the Sheriff's Office's assertion that alternative means of communication exist for someone who wants to reach an inmate. For the reasons set forth below, the Court finds that the Sheriff's Office's postcard only policy does not unconstitutionally infringe Plaintiff's First and Fourteenth Amendment rights.[4]

---

any Sheriff's Office records she reviewed that may have formed the basis for her statements would likely be admissible at trial under Federal Rule of Evidence 803(6), and the photographs attached to her affidavit would likewise likely be admissible. But even if these portions of De Laura's affidavit were stricken, the Sheriff's Office "need not prove that the banned material actually caused problems in the past[] or that the materials are likely to cause problems in the future to show a rational relationship between the postcard policy and jailhouse security. Moreover, it does not matter whether [the Court agrees] with the defendants or whether the policy in fact advances the jail's legitimate interests. The only question that [the Court] must answer is whether the defendants' judgment was 'rational,' that is, whether the defendants might reasonably have thought that the policy would advance its interests." *Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 417 (1989) (additional citations and internal quotations omitted)); *see also Covell v. Arpaio*, 662 F. Supp. 2d 1146, 1152–53 (D. Ariz. 2009) ("A court does not have to agree with the officials' proffered legitimate penological interest. The inquiry under *Turner* is not whether the policy actually serves a penological interest, but rather whether it was rational for jail officials to believe that it would.").

[4] Applying the *Turner* factors, courts have upheld the constitutionality of similar postcard only policies in the face of First Amendment challenges. *See, e.g.*, *Covell*, 662 F. Supp. 2d 1146 (granting summary judgment in favor of defendant sheriff because the mail policy was "reasonably related to legitimate penological objectives."); *Gieck v. Arpaio*, No. CV 07-1143-PHX-NVW, 2008 WL 2604919 (D. Ariz. June 23, 2008) (rejecting plaintiff's facial challenge to defendant sheriff's mail policy and granting summary judgment in favor of defendant sheriff); *Gibbons v. Arpaio*, No. CV 07-1456-PHX-SMM (JCG), 2008 WL 4447003 (D. Ariz. Oct. 2, 2008); *Gambuzza v. Parmenter*, No. 8:09-cv-1891-T-17TBM, 2010 WL 2179029 (M.D. Fla. May 28, 2010) (*sua sponte* dismissing a § 1983 case filed *in forma pauperis* on the ground that the complaint lacked an arguable basis in law because "[c]ourts have found that the post-card only

## II.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party

---

mail policy is 'reasonably related to legitimate penological interests'") (citations omitted); *Ditullio v. White*, No. 8:10-cv-00294-RAL-AEP (M.D. Fla. Jan. 28, 2010) (*sua sponte* denying plaintiff's motion to proceed *in forma pauperis* and dismissing his § 1983 claim because the defendants' postcard policy was "reasonably related to legitimate penological interests").

cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50. Plaintiff has not met his burden to come forward with affirmative evidence to support his claim or raise genuine issues of material fact. While Plaintiff throughout his response to Defendant's motion alleges that facts are in dispute, he points to no record evidence to substantiate his assertion. Plaintiff's mere conclusory claim that disputed questions of fact exist is insufficient.[5]

### III. Analysis

The Supreme Court has thoroughly evaluated the scope of First Amendment rights in the prison context. *See, e.g.*, *Procunier v. Martinez*, 416 U.S. 396 (1974); *Pell v. Procunier*, 417 U.S. 817 (1974) ; *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977); *Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); *Thornburgh v. Abbott*, 490 U.S. 401 (1989);

---

[5] The Court notes that Plaintiff submitted the affidavit of a postal delivery worker who attested that the Palm Beach County jail has rejected for delivery "index cards" sent as a postcard and "lined postcards." (DE 26 at 39). Plaintiff, however, has not alleged that he has attempted to communicate with an inmate at a Palm Beach County jail facility by an index card or a lined postcard of the size permitted by the Sheriff's policy, and that he has had that attempt rejected. Since Plaintiff's complaint was limited to "letters in envelopes sent to inmates" and to the restriction on "sending photographs or any kind or (sic) material to any inmate confined in the Palm Beach County Jail," (DE 1–2, ¶¶ 17, 23), this Court's order does not address, nor should it be construed as approving, a Sheriff's Office policy of prohibiting communication with inmates by means which are the functional equivalent of a postcard.

*Shaw v. Murphy*, 532 U.S. 223 (2001); *Overton v. Bazzetta*, 539 U.S. 126 (2003); *Beard v. Banks*, 548 U.S. 521 (2006). In 2001, the court summarized the relevant jurisprudence:

> Traditionally, federal courts did not intervene in the internal affairs of prisons and instead adopted a broad hands-off attitude toward problems of prison administration. Indeed, for much of this country's history, the prevailing view was that a prisoner was a mere slave of the State, who not only forfeited his liberty, but all his personal rights except those which the law in its humanity accords him. In recent decades, however, this [c]ourt has determined that incarceration does not divest prisoners of all constitutional protections. Inmates retain, for example, the right to be free from racial discrimination, the right to due process, and, as relevant here, certain protections of the First Amendment.
> 
> We nonetheless have maintained that the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large. In the First Amendment context, for instance, some rights are simply inconsistent with the status of a prisoner or with the legitimate penological objectives of the corrections system. We have thus sustained proscriptions of media interviews with individual inmates, prohibitions on the activities of a prisoners' labor union, and restrictions on inmate-to-inmate written correspondence. Moreover, because the problems of prisons in America are complex and intractable, and because courts are particularly ill equipped to deal with these problems, we generally have deferred to the judgments of prison officials in upholding these regulations against constitutional challenge.
> 
> Reflecting this understanding, in [*Turner v. Safley*, 482 U.S. 78 (1987),] we adopted a unitary, deferential standard for reviewing prisoners' constitutional claims: When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. Under this standard, four factors are relevant. First and foremost, there must be a valid, rational connection between the prison regulation and the legitimate and neutral governmental interest put forward to justify it. If the connection between the regulation and the asserted goal is arbitrary or irrational, then the regulation fails, irrespective of whether the other factors tilt in its favor. In addition, courts should consider three other factors: the existence of alternative means of exercising the right available to inmates; the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and the absence of ready alternatives available to the prison for achieving the governmental objectives.

*Shaw*, 532 U.S. at 228–30 (internal citations and quotations omitted); *see also Perry v. Sec'y, Fl.*

*Dep't of Corr.*, 664 F.3d 1359, 1364–67 (11th Cir. 2011).

When applying the four *Turner* factors, the burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Bazzetta*, 539 U.S. at 132 (citations omitted). Plaintiff has failed to do so here.[6]

**A. The postcard only policy is rationally connected to prison security**

Sealed envelopes provide a greater opportunity for the introduction of drugs and weapons into jail facilities than postcards because envelopes can contain multiple pages of paper with folds and creases that lend themselves to smuggling contraband. Postcards have no folds or creases. Even if a jail staffer has to remove the stamp from a postcard to make sure no contraband lies beneath, that effort pales in comparison to the effort necessary to inspect a sealed letter or a pop-up greeting card thoroughly.

Plaintiff concedes that the postcard policy is related to a legitimate penological interest, but disputes that the connection is rational. In support of this position, Plaintiff points to the Sheriff's Office's admission that "fake legal mail" containing contraband has still entered the jail facility since the policy was implemented. Moreover, Plaintiff asserts publishers still deliver books, papers, magazines, and other periodicals to the jail, all of which contain colored inks, photos, pictures, drawings, and, most importantly, more space for smuggling contraband than an envelope. In other

---

[6] Plaintiff's status as an unincarcerated citizen does not change the fact that his challenge to the postcard policy, a prison regulation concerning *incoming* correspondence, is subject to the deferential *Turner* analysis. *See Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989) ("As we have observed, outgoing correspondence was the central focus of our opinion in [*Procunier v. Martinez*, 416 U.S. 396 (1974)]. The implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implication of incoming materials. Any attempt to justify a similar categorical distinction between incoming correspondence from prisoners (to which we applied a reasonableness standard in *Turner*) and incoming correspondence from nonprisoners would likely prove futile, and we do not invite it. To the extent that *Martinez* itself suggests such a distinction, we today overrule that case."); *see also Perry v. Sec'y, Fl. Dep't of Corr.*, 664 F.3d 1359, 1365 & n.1 (11th Cir. 2011).

words, Plaintiff argues that the Sheriff's Office's policy cannot rationally be connected to reducing the introduction of contraband for security purposes if the policy does not completely eliminate the problem. The Court rejects Plaintiff's argument because it is rational for the Sheriff's Office to to implement policies and procedures which reduce the amount of contraband entering its facilities, even if the policies and procedures will not eliminate the problem completely.

**B. Plaintiff has access to alternative means of communication**

To exercise Plaintiff's First Amendment rights, he can still send postcards to inmates, speak with them via telephone, or arrange for visitation.[7] Plaintiff does not address these alternatives except to say that there are too many restrictions on the postcards, e.g., size, color, and graphic designs, for this "alternative" to be constitutional. "Alternative means of communication need not be ideal, however; they need only be available." *Bazzetta*, 539 U.S. at 135.

**C. Accommodating Plaintiff's asserted right would be detrimental to prison security**

The postcard policy gives the jail security staff more time to deal with prison security assignments because they can spend less time screening envelopes for contraband. Plaintiff, echoing his earlier argument, suggests that the staff is still opening, inspecting, and monitoring other sources of mail exempt from the postcard policy for contraband, so there would be no impact on the staff if they were forced to accommodate Plaintiff's request to be able to send sealed envelopes into the jail. The Court rejects Plaintiff's premise because, again, increasing the opportunity for contraband to be introduced into the Sheriff's Office's facilities is not in the best interests of the security staff, other

---

[7] Plaintiff's Complaint alleges that visitation is only done by video. (DE 1, Attach. 2: Complaint ¶ 12). Taking Plaintiff's allegation as true, video visitation still provides an alternative means of communication.

inmates, or the allocation of prison resources. Rather, accommodating Plaintiff's demands "would cause a significant reallocation of the prison system's financial resources and would impair the ability of corrections officers to protect all who are inside a prison's walls. When such consequences are present, [the Court is] particularly deferential to prison administrators' regulatory judgments." *Bazzetta*, 539 U.S. at 135 (citations and internal quotations omitted).

**D. The Sheriff's Office's postcard policy is not an exaggerated response to its concerns**

"*Turner* does not impose a least-restrictive-alternative test, but asks instead whether [Plaintiff] has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal." *Id.* at 136 (citation omitted). To meet his burden, Plaintiff proposes the following alternative to the Sheriff's Office's postcard policy: 1) all correspondence and envelopes must contain the sender's name and address, and the inmate's name and jacket number; 2) all correspondence must be on either plain white copy paper or lined paper, and no larger than 8 ½ x 11 inches; 3) all correspondence is limited to four sheets of paper, including paper containing photocopied photographs, drawings, or pictures; 4) no greeting cards allowed; 5) photographs must be photocopied and are limited to three; 6) all envelopes are recycled; 7) all photographs, drawings, and pictures will adhere to court rulings, laws, and valid jail restrictions; and 8) any color of ink may be used. (DE 26 at 22).

Plaintiff has presented no evidence that this proposal would accommodate his asserted right at a *de minimis* cost to the Sheriff's Office. Rather, under Plaintiff's proposal, jail security staff would still have to open, inspect, and monitor sealed envelopes—the same situation that the postcard policy was meant to address. Thus, if Plaintiff's proposal is implemented, the Sheriff's Office will

continue to face the same problems the post-card policy was designed to eliminate. Hence, Plaintiff's proposal is not an obvious and feasible alternative to the Sheriff's Office's postcard policy.

### IV. Conclusion

The Sheriff's Office's postcard policy does not impede Plaintiff's First Amendment rights because it is content neutral, it logically advances the goals of institutional security and safety, and it is not an exaggerated response to those objectives. Plaintiff is free to send as many postcards as he wishes, to as many inmates as he chooses.[8] The Sheriff's Office has reasonably concluded, based on unrebutted record evidence, that restricting the manner in which Plaintiff may deliver those communications makes its facilities safer and more secure. The Court must accord "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Bazzetta*, 539 U.S. at 132. Because the Sheriff's Office has chosen a constitutionally permissible restriction to achieve its goal of reducing the smuggling of contraband into its facilities, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (and Memorandum of Law) (DE 25) is **GRANTED**. Plaintiff's Objection and Motion to Strike the Evidence Contained in and Referred to in Defendant's Motion for Summary Judgment,

---

[8] To the extent Plaintiff argues that the postcard policy would force him to "spend an exorbitant amount of money on postage to convey any amount for a substantive communication," (DE 26 at 5), the Supreme Court has held that "where 'other avenues' remain available for the receipt of materials by inmates, the loss of 'cost advantages does not fundamentally implicate *free speech* values.'" *Bell v. Wolfish*, 441 U.S. 520, 552 (1979) (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130–31 (1977) (emphasis in original)). *But see Jones*, 433 U.S. at 145 n.7 (Marshall, J., dissenting) ("Contrary to the Court's assertion, free speech values most definitely are implicated by a regulation whose purpose and effect is to make the exercise of First Amendment rights costly.") (citations omitted). As discussed above, "other avenues" remain available here.

with Prejudice (DE 27) is **DENIED.** The Court shall separately issue judgment for Defendant. This case is **CLOSED.**

     **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 11th day of February, 2013.

_____
KENNETH A. MARRA
United States District Judge